LATHAM HOTEL REALTY CORPORATION, Plaintiff, *v.* LEWIS J. VALENTINE, Individually and as Police Commissioner of the City of New York, Defendant.

Supreme Court, Special Term, New York County, November 27, 1944.

884

[redacted]

*Samuel Rubin* for plaintiff.

*Ignatius M. Wilkinson, Corporation Counsel (Harry Zamore* of counsel), for defendant.

McGEEHAN, J. This litigation involves a social problem as well as a legal problem. The defendant, Police Commissioner of the City of New York, is charged with the duty of preventing crime. In discharge of that duty he exercises police surveillance over premises where crime has been committed. Ordinarily, such police surveillance is exercised where there is a likelihood of a continuation of the criminal status. Under such conditions police surveillance is reasonable and proper and not subject to interference by the courts. The Police Commissioner's opinion rather than the court's opinion must control in the absence of unreasonable, arbitrary or capricious conduct on his part.

It appears that the present litigation arose by virtue of two young girls of low moral character and integrity running away from their homes in Pennsylvania and hitch-hiking to New York City. They arrived at a bar and grill in Long Island City. At the bar, through the intervention of the bartender, they met a man whose alias was Jack Cutler, a man past fifty years of

age and of some financial means. Mr. Cutler took the girls by taxicab to New York City to the plaintiff's hotel where he engaged a suite of two rooms between 11 and 12 o'clock midnight. He registered with the two girls as " Jack Cutler and family ". The said Jack Cutler had been to the same hotel on at least six occasions in the two years prior thereto but never with these two girls in question and always with a woman. Thereafter the said Jack Cutler committed an unlawful act upon one of the girls and subsequently pleaded guilty to assault in the third degree. The clerk of the hotel was also arrested for renting accommodations for unlawful purposes but was acquitted after a trial. The Police Commissioner stationed in the lobby of the plaintiff's hotel a uniformed policeman. The hotel maintains no bar and offers no entertainment and caters largely to a conservative and respectable class of tenants and guests who are rather permanent in their tenancy. The hotel has during the past year been designated by the Travelers Aid Society, acting for United Service Organizations, as one of the hotels approved for members of the armed forces on furlough. There is no evidence of any arrest having been made from this hotel for many years past, nor have any police raids been made upon this hotel during this period. The Cutler incident is the only affair presented upon this litigation that has reflected adversely upon the hotel's reputation.

The presence of the uniformed police officer in the lobby of the hotel has evoked criticism from the guests of the hotel. However, there is lacking satisfactory proof that substantial damage or irreparable injury has resulted to the plaintiff from the presence of such officer.

As a matter of law, the Police Commissioner's power to act should not be restricted by judicial mandate to those instances where there has been more than one conviction arising from wrongdoing on the premises. The Police Commissioner in his administrative capacity possesses wide discretionary power. From time to time he must formulate policies which he may change upon attending changes in prevailing conditions. In time of war New York City is crowded to capacity and the police problem of wayward juveniles and prostitutes becomes more acute than in normal peace time, and reasonable men will recognize the necessity for strict supervision by the police. Americans have accepted all kinds of restrictions upon their personal lives without much ado—they have accepted restrictions on their food, their traveling facilities, the use of their automobiles, the heating of their homes and countless other

things and it is reasonable to assume that they will patriotically submit to further safeguards placed by Police Commissioner acting under his broad police powers ·in the interest of public health, safety and morals and particularly for the protection of the men in our armed forces and for the welfare of the unrestrained youngsters· who come to the City for many and diverse reasons. The people of New York should accept these police officers stationed at designated places as a further bona fide attempt on the part of this administration to aid our war effort. The Police Commissioner is presumed to be acting for the common good and not to embarrass or injure people who are adversely affected by his policies. He is, furthermore, under a solemn duty not to unjustly discriminate against any particular person or corporation in the interpretation or application· of his powers. When he acts reasonably, honestly and in the exercise of his best judgment in the discharge of his discretionary powers, then he should be free from judicial supervision.

Upon all the evidence adduced at the trial the court finds that, while the evidence may not establish the plaintiff's participation in the Cutler incident to warrant a conviction predicated upon proof beyond a reasonable doubt, nevertheless the plaintiff has not satisfactorily established such conduct on its part to ·receive the sanction of the court of equity from which it seeks affirmative relief. Furthermore, the court finds that the unfavorable inferences drawn by the Police Commissioner are not unreasonable and capricious under the attending circumstances. An honest difference of opinion as to such inferences does not convert a reasonable inference .into an unreasonable one. Since the court finds that the inferences drawn were not unreasonable, the action taken thereon by the Police Commissioner in the interest of public health, safety and morals is found to be a valid and·reasonable exercise of the police power vested in him as the Police Commissioner of the City of New York. Accordingly the court finds .that the defendant acted reasonably and within his powers when he placed the plaintiff's hotel under police surveillance.

If the circumstances appear to warrant a continuation of such police surveillance under prevailing conditions, this court will not substitute its opinion for that of the Commissioner under the facts as found. Even if the court might act differently from the Police Commissioner under prevailing conditions it can only nullify the Commissioner's action if such action be found to be unreasonable, arbitrary or capricious, which finding

in this instance would be based solely on an honest difference of opinion. While in a criminal prosecution evidence of good character may in itself create a reasonable doubt as to the defendant's guilt and entitlè the defendant to an acquittal, such evidence of good character does not prescribe that a court of equity grant affirmative relief upon the basis of such acquittal. In equity the facts must be considered *de novo* and appraised upon equitable principles rather than upon principles controlling a trial of a criminal matter. Therefore, this court is constrained to award judgment to the defendant but in the exercise of the discretion vested in the court will not award costs to either party.